UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY T. BANAS,

      Plaintiff,

v.                                        Case No. 1:05-cv-751
                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB). For the following reasons, I recommend that the Commissioner's decision be affirmed.

Plaintiff was born on June 27, 1950 and has a four-year college degree in Geoscience (AR 119, 724-25).[1] Plaintiff alleges that he became disabled on June 7, 2001 (AR 119). He had previous employment as a field engineer technician, project supervisor, loss prevention worker and analyst (AR 55). Plaintiff identified his disabling conditions as an injury that affects his neck, back, lower back, arms and shoulders (AR 128). After administrative denial of plaintiff's claim, Administrative Law Judge (ALJ) B. Lloyd Blair reviewed plaintiff's claim *de novo* and entered a decision denying these claims on January 30, 2004 (AR 54-62). Plaintiff requested a review of the decision by the Appeals Council (AR 66-70).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Plaintiff filed a second application for DIB while his first claim was pending before the Appeals Council (AR 20). His second claim was approved by the Disability Determination Service (DDS) on June 22, 2004, with an onset date of May 17, 2004 (AR 20).

On April 26, 2004, the Appeals Council entered an order remanding the first decision back to the ALJ (AR 71-74). In its order, the Appeals Council found that the ALJ's decision did not satisfy the requirements set forth in the Agency regulations and the Social Security Rulings as follows: (1) the decision did not contain an adequate evaluation of plaintiff's alleged mental impairments with the provisions as set forth in 20 C.F.R. 404.1520a; (2) the decision did not address the plaintiff's Global Assessment of Functioning (GAF) scale rating of 50 which "could indicate a serious impairment in social and occupational functioning;" (3) the ALJ failed to place any limitations on plaintiff's residual functional capacity despite finding that he suffered from severe depression; and, (4) the decision did not contain a comparison of plaintiff's residual functional capacity with the physical and/or mental demands of the past relevant work as plaintiff performed it (AR 72-73). The Appeals Council remanded the matter to the ALJ with instructions to take appropriate action to resolve these issues, including updated medical records, and, if necessary, a consultative psychological examination, evidence from a medical expert to clarify the nature and severity of plaintiff's impairments, and supplemental evidence from a vocational expert to clarify the effect of the limitations on plaintiff's occupational base (AR 73).

On remand, plaintiff's case was re-assigned to ALJ Patricia Hartman, who held a supplemental hearing on April 6, 2005 (AR 20). The hearing included testimony from a medical expert and a vocational expert (AR 20). On July 25, 2005, ALJ Hartman issued decision on remand (AR 20-30). In her decision, ALJ Hartman elected not to disturb the DDS' May 17, 2004 disability

determination (AR 20). However, she found that plaintiff was not entitled to a period of disability from his alleged onset date of June 7, 2001 to May 16, 2004 (AR 30). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

As the court previously discussed, plaintiff was found disabled as of May 17, 2004. Consequently, ALJ Hartman's decision was limited to the closed period of June 7, 2001 through May 16, 2004.  ALJ Hartman concluded that plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability (AR 29). Second, the ALJ found that he suffered from severe impairments of affective disorder and osteoarthritis (AR 29).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 29).  The ALJ decided at the fourth step that plaintiff had the residual functional capacity to:

> perform light work activity with no climbing ladders, occasional twisting, no overhead reaching, occasional fingering.  Claimant is moderately limited in his ability to maintain attention and concentration for extended periods.

(AR 29).  The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 40).  The ALJ also found plaintiff's allegations regarding his limitations were not totally credible (AR 29).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 30).  The ALJ accepted the vocational expert's testimony, which identified that an individual with plaintiff's limitations could perform the following jobs in Michigan: bench assembler (8,000 jobs); inspector/packager (8,000 jobs); security monitor (2,000 jobs); and attendant (2,000 jobs) (AR 28).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act for the period of June 7, 2001 to May 16,

2004 and entered a decision denying benefits for that period (AR 30).

## III.   ANALYSIS

Plaintiff seeks a reversal and remand pursuant to sentence four of 42 U.S.C. § 405(g), based upon two errors committed by ALJ Hartman.[2]

### A.  The decision fails to incorporate the "severe" impairment of bilateral carpal tunnel syndrome and degenerative disc disease of the cervical spine in the hypothetical to the VE and resultant RFC.

ALJ Blair's original decision found that plaintiff suffered from severe impairments of degenerative disc disease of the cervical spine, carpal tunnel syndrome and depression (AR 61). On remand, ALJ Hartman found that plaintiff suffered from severe impairments of affective disorder and osteoarthritis (AR 29). Plaintiff contends that ALJ Hartman's decision failed to incorporate the severe impairments of bilateral carpal tunnel syndrome and degenerative disc disease of the cervical spine as set forth in the ALJ's initial decision (prepared by ALJ Blair).

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).   Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error.  *Id.*  An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity.  *Id. See, e.g., Riepen v.*

---

[2]Under sentence four, a court may issue a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Commissioner. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

*Commissioner of Social Security*, No. 05-2407, 2006 WL 2873376 at *2 (6th Cir. October 10, 2006) (even if the claimant is correct in his contention that the ALJ should have found his multiple sclerosis to be a severe impairment, this would not be a basis for reversal or remand because the ALJ considered all of the claimant's alleged limitations throughout the remaining steps of the evaluation process). Accordingly, ALJ Hartman's failure to find that plaintiff suffered from severe impairments of bilateral carpal tunnel syndrome and degenerative disc disease is not an error requiring reversal of the her decision.

Next, plaintiff contests the form of the ALJ's hypothetical question posed to the vocational expert. An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Plaintiff cites *Howard v, Commissioner of Social Security*, 276 F.23d 235, 241 (6th Cir. 2002) for the proposition that "[t]he ALJ must incorporate these severe impairments within the hypothetical to the Vocational Expert and resultant RFC." Plaintiff's Brief at 4. However, the Sixth Circuit has now declined to adopt this new requirement for hypothetical questions posed to

vocational experts as inconsistent with prior caselaw. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).[3] In this circuit, a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. *Id. See also, e.g., Miracle v. Commissioner of Social Security*, No. 01-6437, 2002 WL 1832642 at 82-3 (6th Cir. Aug. 8, 2002) ("[a]n ALJ is not required to mirror a medical report to a vocational expert in order to accurately state a claimant's relevant impairments").

        Here, ALJ Hartman's hypothetical questions included the following limitations:

Q. If we assume an individual who's restricted to light work. Can only do occasional twisting, no climbing of ladders, occasional stairs, no reaching above the shoulders, only occasional handling or fingering with the right hand, sit/stand option as required, and work that involves decreased concentration, could such a person do any of the Claimant's past relevant work?

A. No, he could not.

Q. Assuming that the hypothetical person has the Claimant's professional profile relative to age, education, and work history, and limitations previously identified, in your professional opinion, would there be a significant number of jobs in the regional and national economy that such a person could perform?

(AR 764-65). In response to the second hypothetical question, the vocational expert testified that such a person could perform 8,000 jobs as a bench assembler, 8,000 jobs as an inspector/packager, 2,000 jobs as a security monitor, 2,000 jobs as a parking lot attendant, and "some other jobs" (AR 765-66). The vocational expert also observed that plaintiff was quite skilled and had expertise using computers for data extraction and report writing, and that "[t]here would be sedentary jobs that

---

[3] The court in *Webb* explicitly declined to read *Howard* "to create an entirely new requirement for hypothetical questions to vocational experts." *Webb*, 368 F.3d at 633 ("[a]ccordingly, in light of the facts present in *Howard*, this circuit's prior case law, and the role of a vocational expert under social security regulations, we do not read *Howard* to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions").

he could do . . . using his computer related skills and analytical skills and report writing skills" (AR 764).

Plaintiff contends that the ALJ's hypothetical question failed to consider the limiting effects of his carpal tunnel syndrome, "such as no forceful gripping or grasping, no assembly work, and jobs that require no more than occasional writing, or use of a keyboard and occasional bimanual dexterity." Plaintiff's Brief at 5-6. Plaintiff contends that the ALJ's restriction of "occasional fingering" fails to accurately portray this condition. *Id.* at 6. In addition, plaintiff contends that the ALJ overlooked the limiting effects of his cervical spine, specifically his ability to lift only eight pounds, his ability to bend over, squat and stoop only "a little," and the fact that he gets tired climbing stairs (AR 734). Plaintiff's Brief at 7.

Substantial evidence supports the limitations as set forth in ALJ Hartman's hypothetical questions. ALJ Hartman found that plaintiff's impairment (osteoarthritis) resulted in the ability to perform light work with the following restrictions: "no climbing ladders, occasional twisting, no overhead reaching, occasional fingering" (AR 29).[4] In reaching this determination, the ALJ relied, in part, on the results of a two-day functional capacity evaluation performed at Sparrow Occupational Rehabilitation in January 2002 (AR 26, 188-204). The functional evaluation report

---

[4] 20 C.F.R. § 404.1567(b) defines "light work" as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

9

indicated that plaintiff could lift up to 25 pounds from floor to waist, 10 pounds from waist to overhead, carry 35 pounds with his right hand and carry 5 pounds with his left hand (AR 197-98). The tests indicated that plaintiff's ability to perform left hand grip and pinch was below average (AR 199). He could walk for 1/4 of a mile and had the ability to climb stairs, squat, kneel, crouch and crawl (AR 201-02). Plaintiff had above-average eye-hand coordination in both his left and right upper extremities (AR 203). The ALJ also noted that plaintiff had a genealogy research business and had performed a job in March 2002, for which he earned a $168.00 check (AR 26, 278). The results of the functional evaluation and that plaintiff's ability to work at his genealogy business are consistent with the limitations as set forth in the ALJ's hypothetical questions.

Accordingly, the ALJ properly found that plaintiff can perform a significant number of jobs in the national economy.

> **B.  The RFC fails to incorporate "moderate" difficulties in maintaining concentration, social functioning, persistence and pace.**

Next, plaintiff contends that the ALJ erred because her RFC determination failed to incorporate non-exertional impairments, such as moderate difficulties in maintaining concentration, social functioning, persistence and pace. Plaintiff's Brief at 7. Specifically, plaintiff states, "[o]n remand with ALJ Hartman, Mr. Banas was found to have a 'severe' impairment of Affective Disorder with 'moderate' restrictions in activities of daily living, social functioning and concentration, persistence or pace (Tr. 27)." *Id.* at 7-8. Plaintiff further states that "[a]t a bare minimum, the RFC should have incorporated 'moderate' restrictions of social functioning such as limited contact with the general public and occasional contact with co-workers and supervisors." *Id.* at 8.

As an initial matter, plaintiff does not accurately characterize the ALJ's severe impairment finding. The ALJ found that plaintiff's affective disorder was "severe" within the meaning of the Regulations, "but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 " (AR 25). Plaintiff's citation to the ALJ's statement on page 27 of the administrative record is not her severe impairment finding under the second step of the sequential analysis, but rather a reference to the requirement that the ALJ "follow a special procedure when evaluating the severity of mental impairments" (AR 27). In ALJ Hartman's words:

> This special procedure requires the use of the "B" criteria in the Psychiatric Review Technique Form in all cases in which a mental impairment has been found to exist. The claimant has moderate restrictions of his activities of his daily living, social functioning, and in concentration, persistence or pace. There is no indication that the claimant has ever experienced an episode of decompensation. The evidence does not establish the presence of the "C"criteria.

(AR 27).

The court rejects plaintiff's contention that the ALJ's residual functional capacity (RFC) finding is defective for failing to include statements set forth on the Psychiatric Review Technique Form (PRTF). The RFC is a medical assessment of what an individual can do in a work setting notwithstanding functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

On the other hand, the PRTF is an adjudicatory tool, used to evaluate a claimant's mental impairments by rating the claimant's degree of functional limitation. *Clark v. Sullivan*, No.

11

92-1030, 1992 WL 296709 at * 4 (6th Cir. Oct. 19, 1992). The Sixth Circuit has rejected the argument that an ALJ commits reversible error by failing to incorporate PRTF findings into the hypothetical question posed to the vocational expert:

> This argument is unavailing because the ALJ's findings regarding the PRTF are solely relevant to the issues of whether [the plaintiff] had a severe impairment and whether [the plaintiff's] condition was equivalent to any of the impairments that are listed in Appendix A to the regulations. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996).

*Furst v. Commissioner of Social Security*, No. 99-3581, 2000 WL 282909 at *2 (6th Cir. March 13, 2000). *See also Yoho v. Commissioner of Social Security*, No. 98-1684, 1998 WL 911719 at * 3 (4th Cir. Dec. 31, 1998) (ALJ is not obligated to transfer the findings on the PRTF verbatim to the hypothetical questions).

Although the ALJ found that plaintiff had "moderate restrictions of his activities of his daily living, social functioning, and in concentration, persistence or pace" in completing the PRTF, the ALJ was not required to include these identical restrictions in the hypothetical questions posed to the vocational expert. As explained in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.:

> Individuals who have an impairment with a level of severity which does not meet the criteria of the listings for mental disorders may or may not have the residual functional capacity (RFC) which would enable them to engage in substantial gainful work activity. The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorders are not met or equaled but the impairment is nevertheless severe.
>
> RFC may be defined as a multidimensional description of the work-related abilities which an individual retains in spite of medical impairments. RFC complements the criteria in paragraphs B and C of the listings for mental disorders by requiring consideration of an expanded list of work-related capacities which may be impaired by mental disorder when the impairment is severe but does not meet or equal a listed mental disorder.

Here, the ALJ adequately accounted for plaintiff's mental deficiencies in his hypothetical question

finding that plaintiff was "moderately limited in his ability to maintain attention and concentration for extended periods" (AR 29).

Finally, plaintiff contends that pursuant to *Bankston v. Commissioner*, 127 F.Supp.2d 820 (E.D. Mich. 2000), his moderate restriction in concentration meant that he was unable to concentrate fifty percent of the time. Plaintiff's Brief at 8. Plaintiff's contention is without merit. A single finding in a PRTF does not constitute a *per se* measure of disability. *See Smith v. Halter*, 307 F.3d 377, 379-80 (6th Cir. 2001) (finding no error in a hypothetical question posed to a vocational expert that did not include the ALJ's "finding" in the PRTF that claimant often had problems concentrating, where the hypothetical question "went beyond this simple frequency assessment"); *Furst*, 2000 WL 282909 at *2.

Accordingly, the court concludes that the ALJ hypothetical question posed to the vocational expert accurately portrayed plaintiff's mental impairments.

## IV.   Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated:  December 19, 2006            /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).